## AMERICAN COLORTYPE COMPANY *v.* CONTINENTAL COLORTYPE COMPANY.

### APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 440. Submitted December 22, 1902.—Decided January 19, 1903.

An Illinois corporation transferred to a New Jersey corporation contracts of employment containing stipulations that the employés would not accept employment from any other person during specified periods and would never divulge the secrets of the trade. The New Jersey company by consent of all parties became substituted as a party to such contracts and instructed the employés, who accepted the employment, in valuable trade secrets. The employés who were not citizens of New Jersey then entered into an arrangement to work for a rival Illinois corporation.

*Held*, that, as whatever claim the New Jersey corporation had was based on the promise made directly to it upon a consideration furnished by it, it was not prevented from maintaining an action in the Circuit Court of the United States for the Northern District of Illinois against such employés and the Illinois corporation to restrain the employés from working for, or divulging such secrets to, the Illinois corporation on the ground that the action was to recover the contents of a chose in action in favor of an assignee, the assignor being a citizen of Illinois.

THE case is stated in the opinion of the court.

*Mr. A. M. Pence, Mr. Otto C. Butz* and *Mr. Amos C. Miller* for appellant.

*Mr. John C. Mathis* for appellees.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill in equity brought in the Circuit Court for the Northern District of Illinois by a New Jersey corporation against an Illinois corporation and private persons, citizens of Illinois. Upon demurrer the bill was dismissed for want of jurisdiction on the ground, as is certified, that it was a bill to recover the contents of a chose in action in favor of an assignee, the assignors being citizens of Illinois. The case comes here by appeal. The prayers of the bill are for injunctions to prevent the defendants Maas, Fierlein, Freese and Schultz assisting the defendant company or the defendants Quetsch and Seibert in the three-color printing business, revealing secret processes, etc., until different specified dates. The main ground of the prayers is the contracts to be mentioned, and the question is whether the claim stated by the plaintiff is a claim as assignee.

The plaintiff is the assignee of the assets and good will of the National Colortype Company, the American Three-Color Company, Illinois corporations, and the Osborne Company, a New Jersey corporation, and was formed on March 1, 1902, for the purpose of consolidating the three. Among the more important contracts which purported to be transferred were two between the National Colortype Company and Maas and Fierlein respectively. By the former Maas was employed as superintend-

ent of the plat-making department, and agreed to remain in the company's employment and not to accept employment from others in the business of three-color printing for five years from December 1, 1901, and not to become interested in any way in that business in the United States, east of the Rocky Mountains, or divulge any secrets or processes relating to that business, for ten years from the day mentioned. By the other contract Fierlein was employed as salesman, and agreed to devote his whole time and attention to the interest and business of the company for two years from the same date. There was a similar contract with the defendant Freese, expiring May 1, 1903, but containing a promise by him never to divulge any of the secrets, methods or practices of the company, and agreeing that his going to work for any others engaged in similar business should be considered a breach of the promise just set forth.

The bill alleges that Maas, knowing of the transfer, consented to it, announced his intention of holding the plaintiff to the contract with him, remained in its employ in the same capacity, accepted the stipulated salary and was instructed in valuable secrets, and that the complainant by the consent of all parties became substituted as a party to the contract in place of the National Colortype Company. There are shorter but similar allegations concerning Fierlein and Freese. An independent contract with the defendant Schultz is alleged, which has expired, but it is alleged that by virtue of his employment he also has become possessed of trade secrets and processes belonging to plaintiff.

The bill goes on to allege that Maas and Fierlein while in the plaintiff's employment and pay, conspiring with the defendants Quetsch and Seibert, got up the defendant corporation as a rival to the plaintiff, induced the defendants Freese and Schultz to enter its service, have taken over their own special skill and knowledge of the plaintiff's secrets to the hostile camp, and, in short, will ruin the plaintiff if they are permitted to go on.

We are of opinion that a case is stated within the jurisdiction of the court. It is true that the starting point for the relations between the plaintiff and its employés was what purported to

be an assignment. It is true that the bill emphasizes this aspect of the case and states the evidence more accurately than the result. But those circumstances do not change the legal conclusion from the facts set forth. The allegations show that, having the old contract before them, the parties came together under a new agreement, which was determined by reference to the terms of that contract, but which none the less was personal and immediate. Maas, Fierlein and Freese, who were under contract with the National Colortype Company, agreed to work for the plaintiff instead. The plaintiff accepted their promises and gave a consideration for them by undertaking personally to pay. It does not matter that the bill calls this becoming substituted as the employer and as a party to the old contracts. The plaintiff could not become substituted to a strictly personal relation. All that it could do was to enter into a new one which was exactly like that which had existed before. Service is like marriage, which, in the old law, was a species of it. It may be repeated, but substitution is unknown. *Arkansas Valley Smelting Co.* v. *Belden Mining Co.*, 127 U. S. 379, 387.

It may be that the form of the allegation was suggested by the hope to get some help from the written documents when the plaintiff comes to the proof, as against difficulties raised by the statute of frauds. We have nothing to do with that. It is quite manifest that the plaintiff, if it prevails, will not do so on the ground that, by virtue of the transfer to it, it can claim the beneficial interest in the original agreements, and thus is an assignee within the definition given in *Plant Investment Co.* v. *Jacksonville, Tampa & Key West Ry. Co.*, 152 U. S. 71, 77; if it recovers it will recover on a promise made directly to it upon a consideration which it has furnished. This test is recognized in *Thompson* v. *Perrine*, 106 U. S. 589, 593, although the doctrine there quoted from Mr. Justice Story, that the holder of a note payable to bearer recovers on a new promise made directly to himself, has been controverted elsewhere, and, indeed, long has smouldered as a dimly burning question of the law. Holzendorff, Rechtslexicon, sub v. Inhaberpapiere, ad fin. (3d ed. 365, 371). Compare *Abbott* v. *Hills*, 158 Massachusetts, 396, 397; Story, Confl. of Laws, 8th ed. § 344.

What we have said suggests the answer to the objection that a novation is not set forth. The allegations seem to mean that the old company was discharged, but this is not a question of novation. We are dealing with a new bilateral contract made up of mutual undertakings to serve and to pay. The implication that the old contract is discharged is material only so far as it shows that the plaintiff's rights can be enforced without unjustly disregarding the rights of a third person.

It is unnecessary to consider whether an independent ground of jurisdiction is shown in the threatened revelation of trade secrets, or to discuss the different position of the defendant Schultz. Whether the obligation not to disclose secrets be independent of the express contract or not, a case is made out. The question of independence will not arise unless a difficulty is encountered in the evidence because of the statute of frauds, but that is not a matter of pleading. We have not to consider how far the injunction should go in case the plaintiff succeeds, or anything except the objection that the plaintiff is suing as an assignee.

*Decree reversed.*