124 U.S. 730
 8 S.Ct. 686
 31 L.Ed. 574
 SHOECRAFT
v.
TRUSTEES OF THE INTERNAL IMPROVEMENT FUND OF THE
STATE OF FLORIDA et al.
 February 20, 1888.
 
 [ This is a suit in equity to enforce the performance of a contract, made between the trustees of the internal improvement fund of the state of Florida and the Jacksonville, Pensacola & Mobile Railroad Company, for the conveyance of certain lands in Florida, and to determine the rights of various parties claiming interests in them. As alleged in the bill, by the act of congress of September 28, 1850, to enable the state of Arkansas and other states to reclaim the swamp lands within their limits, (9 St. 519,) there was granted to the state of Florida the whole of the swamp and overflowed lands within it, made unfit thereby for cultivation, which were at the date of the act unsold; and this grant was accepted by the state. By an act of the legislature, approved January 6, 1855, all of these lands and the proceeds thereof were set apart as a separate fund, called the internal improvement fund of the state, to be applied as there provided. To insure the proper application of the fund to the purposes declared, the lands and the charge of the proceeds arising from their sale were vested in five trustees, namely, the governor, the comptroller of public accounts, the state treasurer, the attorney general, and the register of public lands of the state, and their successors in office, in office, in trust, with power to sell the lands, to receive payment thereof, and to make such disposition of the proceeds as the act directed, and, among other things, to pay the interest as it should become due on the bonds to be issued by different railroad companies under the authority of the act; and also to receive semi-annually one-half of 1 per cent of the bonds of each separate line of railroad, and invest the same in certain specified securities. The act provide that all bonds issued under its provisions by any railroad company should be a first mortgage on its road-bed, iron, equipment, workshops, depots, and franchises, and that upon its failure to provide the interest on the bonds issued by it, and the sum of 1 per cent. per annum as a sinking fund, the trustees should take possession of its of its road and property and sell the same, and apply the proceeds to the purchase and cancellation of the outstanding bonds on which default was thus made. The provisions of the act were accepted by various railroad companies, namely, the Florida, Atlantic & Gulf Central Railroad Company, the Tallahassee Railroad Company, and the Florida Railroad Company, each of which was, prior to 1860, a corporation created under the laws of the state, and had issued its bonds, and prior to the year 1867 had made default in the payment of the interest on thim and of the 1 per cent. required for the sinking fund. These bonds, or at least the interest thereon in default, and the 1 per cent., were a first lien upon all the swamp lands granted to the state. The amount of the bonds, interest, and percentage in default reached nearly three millions of dollars. In 1868 and 1869 the trustees seized each of these roads and sold them to various purchasers for sums which in the aggregate were less by one million and a half of dollars then the amount in default, leaving the internal improvement fund and the lands liable for the deficiency. Among the holders of railroad bonds issued was one Francis Vose, a citizen of New York, who held bonds of the Florida Railroad Company, and he brought a suit in equity in the United States circuit court for the Northern district of Florida against the trustees of the improvement fund, praying that the amount due him might be collected and enforced out of the lands conveyed to the trustees. On December 6, 1870, an injunction was issued in that suit, restraining the trustees from selling or disposing of the lands otherwise than in accordance with the provisions of the act of 1855. At this time the improvement fund and the lands were incumbered for a very large amount; and the trustees, being desirous to arrange for the payment of the debts, including the claim of Vose, and to aid in the construction of a certain railroad, on May 31, 1871, entered into an agreement with the Jacksonville, Pensacola & Mobile Railroad Company, by which they were to convey to it all the lands held or to be held by them in trust under the act of 1855, with some few exceptions not necessary to be mentioned; and the railroad company, in consideration thereof, was to satisfy and pay all existing liabilities in the nature of liens on the internal improvement fund, to cancel and surrender the evidences thereof to the trustees, to pay the sum of $100,000 for the benefit of the fund, and to construct a certain railroad from Jacksonville to Mobile, by extending the road from Quincy, its then terminus, and complete it within five years. The trustees were to execute deeds of all of said lands and to deliver the same to the railroad company as soon as the injunction in the Vose case should be dissolved or modified. This contract was, in December, 1871, submitted to the court by Vose and the trustees for its consideration and approval, and the court thereupon decreed substantially as follows: That there was due Vose by the trustees the sum of $211,885.45 upon the past due coupons of the bonds held by him, and also certain other sums, making in the aggregate $273,000; that the articles of agreement between the trustees and the railroad company be confirmed and made valid upon the following conditions: that the trustees should forthwith, upon the payment by the railroad company of the sum of $100,000 as provided, execute and deliver to one Littlefield, president of the company, or such person or corporation as he should designate, deed of conveyance of a certain 100,000 acres of land, and also execute and deliver deeds of conveyance to the Jacksonville, Pensacola & Mobile Railroad Company of all the lands embraced in said articles of agreement, not in the decree otherwise provided for; which deeds were to be deposited with Brown Bros. & Co. of New York city, and to be delivered by such firm to the railroad company upon the payment by it to said Vose of his claim upon the internal improvement fund, upon such terms as should be arranged between him and the company, within 10 months from the date of the decree. Various transactions were had between the Jacksonville, Pensacola & Mobile Railroad Company and other parties subsequently to this contract, and, among others, it executed and delivered to the Security Construction & Trust Company 800 of its bonds, for the sum of $10,000 each, running to the complainant, Matthew J. Shoecraft, or bearer, and payable January 1, 1903, with interest annually at the rate of 6 per cent. per annum, and, in order to secure the payment of the principal and interest of said bonds, executed to him a trust deed or mortgage, bearing date January 23, 1883, upon the property and franchises of the railroad company, and upon the right, title, and interest which the company had or might thereafter acquire in and to the lands granted or agreed to be granted by the trustees of the internal improvement fund by the contract of May 31, 1871. The trust thus created was accepted by Shoecraft, and to compel a performance of the contract of May 31, 1871, by the execution of a conveyance of the lands held by the trustees, and to determine the rights of thers claiming interest in the lands, this suit is brought.
 C. K. Davis, for appellant.
 W. S. Chisholm and R. G. Erwin, for appellees.
 FIELD, J.
 
 
 1
 The conveyance to the company of the lands held by the trustees pursuant to the contract between those parties is essential to the value of the security offered for the bonds executed to the Security Construction & Trust Company, and to enable the complainant to discharge the trust accepted by him. But the contract being between citizens of the state of Florida, a suit upon it could not be maintained by the railroad company in the circuit court of the United States, and therefore could not be maintained by its assignee, the complainant. Section 629 of the Revised Statutes, which was in force when the suit was commenced, declares that 'no circuit court shall have cognizance of any suit to recover the contents of any promissory note or other chose in action in favor of an assignee, unless a suit might have been prosecuted in such court to recover the said contents if no assignment had been made, except in cases of foreign bills of exchange.' The terms used, 'the contents of any promissory note or other chose in action,' were designed to embrace the rights the instrument conferred which were capable of enforcement by suit. They were not happily chosen to convey this meaning, but they have received a construction substantially to that purport in repeated decisions of this court. They were so construed in the recent case of Cobbin v. County of Black Hawk, 105 U. S. 659, where the subject is fully considered, and the decisions cited. There a suit brought to enforce the specific performance of a contract was held to be a suit to recover the contents of a chose in action, and therefore not maintainable, under the statute in quistion, in the circuit court of the United States, by an assignee, if it could not have been prosecuted there by the assignor had no assignment been made.
 
 
 2
 It is contended, however, that the complainant is not the assignee of the contract of May 31, 1871, but a mortgagee in trust of the lands mentioned therein, and can therefore maintain the suit by reason of his citizenship in New York. We cannot assent to this position. It is true the complainant is a mortgagee in trust of such interest as the mortgagor had in the lands, but he brings the suit, not to foreclose the mortgage, but as one having a beneficial interest in the contract, a d consequently a right to enforce it. The object of the suit is to perfect the title to the lands mortgaged by enforcing the performance of the contract. The deed of trust sets out in full the contract, and conveys all the right, title, and interest which the railroad company had or might thereafter acquire in and to the lands granted by the trustees by their contract of May 31, 1871. This conveyance of all right, title, and interest 'in and to' the lands granted, or agreed to be granted, by the contract of asle, carried with it to the complainant an interest in the contract so far as such lands were concerned; that is, the right to perfect the title to the lands by enforcement of the contract. It was in legal effect the assignment of the contract itself. If he cannot enforce that contract and thus secure the title to the company, the deed of trust, so far as the lands covered by the contract are concerned, is worthless as a security. If he has no interest in the contract, he has no standing in court to ask its enforcement, and if he is to be regarded as an assignee of the contract under the deed of trust, he is disabled from maintaining the suit in the circuit court by section 629 of the Revised Statutes. He is subject to the same disability in that respect as his assignor. Decree affirmed.